In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 25-2256 & 25-2268

E.E.V. and M.C.C.-G.,

*Petitioners*,

*v.*

TODD W. BLANCHE,
Acting Attorney General of the United States,

*Respondent*.

On Petitions for Review of Orders of the
Department of Homeland Security.
Nos. A000-000-000 & A000-000-000.

ARGUED APRIL 15, 2026 — DECIDED JULY 6, 2026

Before BRENNAN, *Chief Judge*, and HAMILTON and KOLAR, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Federal law prohibits removal of a noncitizen from the United States to a country where he or she will be persecuted because of a protected ground or subjected to torture. In most circumstances, agency denials of such relief are subject to judicial review.

We consider here the federal government's motions to dismiss petitions for review brought by noncitizens who seek withholding of removal or relief under the Convention Against Torture (CAT). Petitioners E.E.V. and M.C.C.-G. are two of a larger group of noncitizens who seek judicial review of removal orders because they fear persecution and torture if they are removed. Before the Supreme Court decided *Riley v. Bondi*, 606 U.S. 259 (2025), binding circuit precedent required petitioners like E.E.V. and M.C.C.-B. to wait to file their petitions for judicial review until all their administrative proceedings had concluded. E.g., *F.J.A.P. v. Garland*, 94 F.4th 620, 628–29 (7th Cir. 2024); see 8 U.S.C. § 1252(b)(9) (so-called "zipper clause" consolidating review of all questions of law and fact arising from removal proceedings). The Court held in *Riley* that the statutory thirty-day deadline to seek judicial review in such cases runs from the date of a final administrative removal order even though a noncitizen's requests for withholding of removal and CAT relief may still be pending. Unless the *Riley* treatment of that deadline is subject to equitable tolling, these petitions for review were filed too late.

The government has moved to dismiss these petitions as untimely. It has also raised new jurisdictional arguments that seek more broadly to block judicial review of many noncitizens' requests for withholding of removal or CAT relief. We reject the government's attempts to limit such judicial review, both as applied to these petitioners and more broadly. We instead follow the path mapped out in *Riley* itself and find these petitioners are entitled to equitable tolling of the thirty-day deadline. We deny these motions to dismiss.

I.　*Factual and Procedural Background*

　A.　*Withholding-Only Relief*

The government may not remove involuntarily a noncitizen from the United States to a country: (1) where her "life or freedom" would be threatened due to her race, religion, nationality, membership in a particular social group, or political opinion; or (2) where it is more likely than not that she would be subjected to torture. The first is a statutory prohibition known as "withholding of removal" or sometimes "statutory withholding of removal." 8 U.S.C. § 1231(b)(3)(A); see 8 C.F.R. §§ 208.1(a)(1), 208.16(a) (terminology). The second is an international treaty obligation under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, often referred to as "CAT relief." Dec. 10, 1984, Senate Treaty Doc. No. 100-20, 1465 U.N.T.S. 85; see also *Auguste v. Ridge*, 395 F.3d 123, 130–34 (3d Cir. 2005) (discussing ratification and congressional reservations); 8 C.F.R. § 208.18 (implementing regulations). With five narrow exceptions, nearly all noncitizens present in the United States are eligible to seek these forms of relief. Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), § 2242(c), Pub. L. No. 105-277, 112 Stat. 2681–822, citing 8 U.S.C. § 1231(b)(3). Because "removal from the United States is not at issue" in such proceedings—only the country where a noncitizen may be sent is at issue—these limits are forms of "withholding-only" relief. *Riley*, 606 U.S. at 263.[1]

A noncitizen may seek withholding-only relief during removal proceedings before an immigration judge and the

---

[1] Asylum is not a form of withholding-only relief. *Johnson v. Guzman Chavez*, 594 U.S. 523, 536–37 (2021).

Board of Immigration Appeals. However, not all noncitizens go through such plenary removal proceedings. Three alternative removal processes are implicated in these petitions for judicial review. First, the Department of Homeland Security may issue an "expedited removal order" to a noncitizen who lacks valid entry documents and cannot demonstrate continuous physical presence in the United States for the past two years. 8 U.S.C. § 1225(b)(1)(A); 8 C.F.R. § 235.3(b)(7) (terminology). Second, the agency may issue a "final administrative removal order" (sometimes known as a "FARO") to a noncitizen convicted of an "aggravated felony." 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1(b)(2)(i) (terminology). Third, the agency may "reinstate" a prior order of removal against a noncitizen who was previously removed and who then illegally reenters the country. 8 U.S.C. § 1231(a)(5). Expedited removal orders, final administrative removal orders, and reinstatement orders may not be reviewed by an immigration judge or appealed to the Board. 8 U.S.C. §§ 1225(b)(1)(C), 1231(a)(5); 8 U.S.C. § 1228(b)(3) (challenge to a FARO goes straight to court of appeals without review by immigration judge or Board).[2]

Nonetheless, noncitizens subject to these orders are still entitled to seek withholding-only relief. A noncitizen subject to a final administrative removal order or reinstatement order who expresses fear of returning to the country of removal will

---

[2] There is one limited exception: when a person subject to expedited removal claims to have status as a lawful permanent resident, refugee, or asylee, or claims to be a United States citizen, and the immigration officer cannot verify that claim, the officer will issue the expedited removal order and refer the person to an immigration judge for review of that claim (and not any other issues). If the person proves his or her claim, the expedited removal order is vacated. The immigration judge's decision cannot be appealed to the Board. See 8 C.F.R. § 235.3(b)(5).

be interviewed by an asylum officer to determine if the noncitizen has a "reasonable fear" of persecution or torture, meaning a reasonable possibility exists that he will be persecuted on the basis of a protected ground or tortured in the country of removal. 8 C.F.R. § 208.31(b)–(c).

If the asylum officer makes a positive determination, the noncitizen is referred to an immigration judge for withholding-only proceedings. § 208.31(e). If the officer makes a negative determination, the noncitizen may have that determination reviewed by an immigration judge based on the record before the asylum officer. § 208.31(g); § 1208.31(g) (2020). If the immigration judge upholds the negative determination, that decision may not be appealed to the Board. The immigration judge may also vacate the negative determination and place the noncitizen in withholding-only proceedings in which the final decision may be appealed to the Board. § 1208.31(g)(1)–(2) (2020).[3]

For an expedited removal order, the process is slightly different. A noncitizen who asserts a fear of persecution or torture in the country of removal will be interviewed by an asylum officer to determine if the noncitizen has a "credible fear" of persecution or torture, meaning there is a "significant possibility" the noncitizen is eligible for withholding of removal or CAT protection. 8 C.F.R. § 208.30(b), (e)(2)–(3). If the officer makes a positive determination, the noncitizen will be referred to an immigration judge for withholding-only proceedings (or for plenary removal proceedings), and again the final

---

[3] See *Pangea Legal Services v. U.S. Dep't of Homeland Security*, 512 F. Supp. 3d 966 (N.D. Cal. 2021) (enjoining amendment to rule).

decision may be appealed to the Board. § 208.30(f); *Grace v. Barr*, 965 F.3d 883, 887–88 (D.C. Cir. 2020).[4]

A negative determination must be reviewed by a supervisory asylum officer, and if the supervisor concurs with the officer, the noncitizen may have the determination reviewed by an immigration judge, who must provide the noncitizen with an opportunity to be heard and questioned. § 208.30(g)(1). If the immigration judge concludes that the noncitizen lacks a credible fear of persecution or torture, the noncitizen cannot appeal to the Board. § 1208.30(g)(2)(iv)(A).

Critical to this case, any "final order of removal" other than an expedited removal order is subject to judicial review in the court of appeals through a petition for review. 8 U.S.C. § 1252(a)(1)–(2). The term "final order of removal" is not defined in the United States Code, although the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) provides that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." § 309(d)(2), Pub. L. No. 104-208, 110 Stat. 3009–627. An "order of deportation" means an order "concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A). The "zipper clause" consolidates judicial review of all questions of law and fact arising out of removal proceedings into a single judicial proceeding through a petition for review of a final order of removal. § 1252(b)(9) ("Judi-

---

[4] A noncitizen subject to an expedited removal order may apply for asylum, 8 U.S.C. § 1225(b)(1)(A)(ii), unlike someone subject to a final administrative removal order or reinstatement order, §§ 1228(b)(5), 1231(a)(5). Upon a positive credible-fear determination, the asylum officer may retain jurisdiction over the asylum claim. 8 C.F.R. § 208.30(f).

cial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.").

The motions to dismiss we consider here are based on the statutory deadline for filing a petition for review: "The petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Until recently, every court of appeals, including this court, held that the clock for that deadline started upon the conclusion of withholding-only proceedings. *F.J.A.P. v. Garland*, 94 F.4th 620, 628–29 (7th Cir. 2024) (collecting cases and noting Second and Fourth Circuits had recently departed from this view), *abrogated by Riley v. Bondi*, 606 U.S. 259.

The Supreme Court held last year in *Riley v. Bondi*, however, that because a final administrative removal order may not be appealed within the agency—which is also true of a reinstatement order—it becomes final and starts the clock for the thirty-day deadline upon issuance even if withholding proceedings remain pending. 606 U.S. 259, 266–67, 272 (2025) ("withholding-only proceedings do not disturb the finality of an otherwise final order of removal"). The Court recognized the "legitimate practical concerns" posed by needing to file a petition for review before withholding-only proceedings conclude. *Id.* at 272. The solution to that problem, the Court wrote, is for the government to "alert the court of appeals to the pendency of a withholding-only proceeding so that review there can wait until that issue is decided." *Id.*

The *Riley* Court also held that the thirty-day deadline is not a jurisdictional bar. *Id.* at 277. That conclusion is important because "[a] litigant's failure to comply with a jurisdictional bar deprives a court of all authority to hear a case, regardless of waiver or equitable considerations." *Id.* at 273, quoting 33 Wright & Miller, Federal Practice & Procedure § 8316, p. 50 (2018). The Court concluded: "In sum, we hold that § 1252's 30-day filing rule is not jurisdictional, but because the Government does not wish to press that ground for dismissal, it does not preclude this case from proceeding on remand." *Riley*, 606 U.S. at 277. An opinion dissenting in part noted that in such cases, equitable tolling is "likely available now that the Court has recognized that § 1252(b)(1)'s appeal deadline is not jurisdictional." *Id.* at 302–03 (Sotomayor, J., dissenting in part).

B.  *These Petitions for Review*

Shortly after the Supreme Court decided *Riley* on June 26, 2025, this court received over a dozen petitions for review from noncitizens whose orders of removal had been final for more than thirty days when *Riley* was decided, but whose withholding-only proceedings were still pending or whose negative credible-fear determinations were pending before immigration judges. Unlike in *Riley* itself, however, the government has moved to dismiss or deny each of these petitions as untimely. Because the government and each petitioner raised substantially similar arguments in each motion, we directed the parties to identify suitable lead cases for briefing and argument on the common issues presented in these motions. After receiving their selections, we consolidated these

two petitions for briefing and argument on the motions to dismiss.[5]

E.E.V. is a citizen of El Salvador. She entered the United States unlawfully and was removed to El Salvador under an expedited removal order issued in March 2007 and executed two months later. Years later, in August 2015, Border Patrol agents apprehended her after she reentered the United States near Rio Grande City, Texas. The agency issued a reinstatement order the next day in McAllen, Texas. At some later time, E.E.V. expressed fear of returning to El Salvador. An asylum officer conducted a reasonable-fear interview in February 2017. The officer determined that E.E.V. showed a reasonable fear of persecution or torture in El Salvador and referred her to an immigration judge for withholding-only proceedings. Her proceedings began in Chicago and were later reassigned to another immigration judge in Indianapolis, where they remain pending as of this decision. E.E.V. filed her petition for review on July 24, 2025, less than thirty days after the Supreme Court issued its decision in *Riley*.

M.C.C.-G. is a citizen of Mexico who entered the United States on an unknown date. In November 2018, she was convicted of theft in a municipal court in Goshen, Indiana, and given a suspended sentence of 365 days in custody. She was later detained by immigration officials after a traffic stop. The agency notified her of its intent to issue a final administrative

---

[5] The other petitions for review presenting common issues identified at the time were Nos. 25-2226, 25-2227, 25-2238, 25-2239, 25-2257, 25-2258, 25-2265, 25-2266, 25-2267, 25-2273, 25-2274, 25-2281, and 25-2282. This court later granted the petitioner's unopposed motion for voluntary dismissal in No. 25-2266. See Fed. R. App. P. 42(b). At this time, we are also aware that similar issues may be presented in Nos. 25-2301 and 25-2453.

removal order on May 11, 2025, and issued it the next day. She expressed fear of returning to Mexico, but an asylum officer found that she did not have a reasonable fear of persecution or torture. She requested review of that determination by an immigration judge. That request was still pending when she filed her petition for review on July 26, 2025, also within thirty days after *Riley* was issued. On August 7, 2025, the immigration judge vacated the negative reasonable-fear determination and placed her in withholding-only proceedings. Those proceedings were before an immigration judge during the briefing of these motions, but the judge later denied relief on December 8, 2025. She appealed to the Board, where her proceedings remain pending as of this decision.

## II. *Jurisdictional Challenges*

Before we turn to the equitable tolling issues at the center of these cases, we must address two new arguments challenging this court's jurisdiction. The first challenge—raised for the first time in the government's reply brief—is that a reinstatement order is not subject to judicial review because it is not a final order of removal. That argument asks us to overrule binding precedents in this circuit and is contrary to precedents in all other circuits as well. If we were to adopt the government's position, we would foreclose judicial review of questions of law and fact arising from reinstatement orders, including entitlement to CAT protection and even claims of mistaken identity and United States citizenship. The second challenge, that these petitions were filed too early, is irreconcilable with the government's primary position—that they were filed too late—and runs counter to the course charted in *Riley* itself for placeholder petitions for review like these. We reject both jurisdictional challenges.

A. *Reviewability of Reinstatement Orders*

This court has consistently concluded that a reinstatement order is a final order of removal subject to judicial review under 8 U.S.C. § 1252. E.g., *Velazquez-Olais v. Blanche*, 172 F.4th 536, 538 (7th Cir. 2026); *F.J.A.P.*, 94 F.4th at 633; *Villa v. Barr*, 924 F.3d 370, 373 (7th Cir. 2019); *Torres-Tristan v. Holder*, 656 F.3d 653, 656 (7th Cir. 2011); *Lemos v. Holder*, 636 F.3d 365, 366 (7th Cir. 2011). Though the dissenting opinion calls these conclusions "'drive-by' jurisdictional statements," neither that opinion nor the government has identified any precedential decision from any circuit holding otherwise. See post at 53. And while *Riley* abrogated some of the analysis in *F.J.A.P.*, the Court said nothing about reinstatement orders. That's not surprising because *Riley* did not involve a reinstatement order in the first place.

Judicial review of a reinstatement order is limited to the reinstatement order itself. *Villa*, 924 F.3d at 372–73. To issue a reinstatement order, an immigration official must make three determinations: (1) the identity of the noncitizen; (2) that the noncitizen was removed or departed voluntarily under a prior order of removal; and (3) that the noncitizen unlawfully reentered the United States. *Id.* at 373, citing 8 C.F.R. § 241.8(a). Those three determinations, not the validity of the original order of removal that is "reinstated," are what may be reviewed. See *id.*

Although judicial review of a reinstatement order is narrow, the zipper clause both allows and requires a petition for judicial review of a final order of removal to raise a petitioner's challenges to the denial of withholding-only relief. See *F.J.A.P.*, 94 F.4th at 635 ("Section 1252(b)(9)'s zipper clause consolidates our review of withholding proceedings with our

review of final orders of removal; it does not *limit* that review."); see also *id.* at 641 (opinion of Brennan, J.) ("With a final order of removal, we can review all questions of law and fact … arising from any action taken or proceeding brought to remove [the] alien from the United States.") (internal quotation marks omitted and alterations in original).[6]

The government argues now that a reinstatement order is not a final order of removal. If that position were accepted, courts of appeals would lack jurisdiction to consider through a petition for review any questions of law and fact arising from a reinstatement order. There would be no judicial review of whether the government has the right person, whether the person is likely to be subjected to torture, whether the person reentered the country illegally, and even whether the person subject to the order is or is not actually a United States citizen with a constitutional right to remain in the United States.

We do not overrule circuit precedent without a "compelling reason," such as statutory changes or intervening Supreme Court decisions that have undermined our prior case law. *United States v. Betts*, 99 F.4th 1048, 1055–56 (7th Cir. 2024), quoting *Wilson v. Cook County*, 937 F.3d 1028, 1035 (7th

---

[6] Although prior precedents of this court characterized § 1252(b)(9) as a limit and not a grant of jurisdiction, they did so in the context of petitioners arguing that the zipper clause overrides other unambiguous jurisdictional limits in § 1252. See *Leyva v. Ashcroft*, 380 F.3d 303, 307 (7th Cir. 2004). This court has since emphasized the "strong presumption favoring judicial review of administrative action." *F.J.A.P.*, 94 F.4th at 633, quoting *Salinas v. United States Railroad Retirement Bd.*, 592 U.S. 188, 197 (2021). Accordingly, "[t]o the extent there is ambiguity in the meaning of" the phrase "shall be available only in judicial review of a final order" in § 1252(b)(9), "it must be resolved in [petitioners'] favor." See *Salinas*, 592 U.S. at 197.

Cir. 2019) (per curiam). Three cases warrant discussion here: *Nasrallah v. Barr*, 590 U.S. 573 (2020), *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), and *Riley*. None provides a sound reason, let alone a compelling one, to overrule circuit precedent and restrict judicial review in such cases.

*Nasrallah* did not undermine this court's precedents. The "narrow" question presented in *Nasrallah* was whether the so-called "criminal alien bar" stripping the courts of appeals of jurisdiction to review factual challenges, but not legal or constitutional challenges, to a final order of removal for a noncitizen convicted of certain criminal offenses extends to the denial of CAT relief. The Court's answer hinged on analysis that is not relevant here. 590 U.S. at 576; see 8 U.S.C. § 1252(a)(2)(C); *F.J.A.P.*, 94 F.4th at 627 (terminology). The Court concluded that it does not, for two reasons. "A CAT order is not itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.'" 590 U.S. at 582, quoting 8 U.S.C. § 1101(a)(47)(A). It also does not "merge into" a final order of removal since it does not "affect the validity" of the removal order, as the noncitizen still may be removed to a different country. *Id. Nasrallah* itself recognized the narrow scope of its "merge into" analysis when it wrote that "FARRA and § 1252(b)(9) simply establish that a CAT order may be reviewed together with the final order of removal, not that a CAT order is the same as, or affects the validity of, a final order of removal." *Id.* at 583. In other words, whether an order merges into a final order of removal for purposes of the criminal alien bar is a distinct question from whether it is subject to judicial review through a petition for review of a final order of removal.

*Guzman Chavez* also did not undermine circuit precedent. There, the Court discussed two immigration detention provisions not relevant to these petitions. 594 U.S. at 526, 533, citing 8 U.S.C. §§ 1226(a), 1231(a)(1)(A)–(B), (2). As both the majority and the separate opinion in *F.J.A.P.* recognized, the Court expressly left open in a footnote whether a reinstatement order is a final order of removal and noted that § 1252 "uses different language than § 1231 and relates to judicial review of removal orders rather than detention." *Id.* at 535 n.6, cited in *F.J.A.P.*, 94 F.4th at 632 (majority), 643–44 (Brennan, J.).

Further, in *F.J.A.P.*, which was decided in 2024, after *Nasrallah* and *Guzman Chavez*, we reaffirmed that a reinstatement order is a final order of removal subject to (limited) judicial review. 94 F.4th at 633. A separate opinion questioned that holding and drew particular attention to *Nasrallah* and *Guzman Chavez*, so we are confident the majority did not simply overlook this issue. See *id.* at 643–44 (Brennan, J.). The separate opinion noted that "caution counsels against" overruling precedent and wrote: "So, as does the majority opinion, I conclude that a reinstatement decision is a final order of removal subject to judicial review under § 1252(b)(9)." *Id.* at 644 (Brennan, J.).

That leaves only *Riley* as a possible candidate for overruling circuit precedent. But *Riley* clearly supports our precedents on the reviewability of reinstatement orders. In concluding that a denial of withholding-only relief is not a final order of removal, the Court wrote as follows on the definition of the term "order of removal":

> While the Immigration and Nationality Act does not define the term "order of removal," any statutory reference to "an order of removal"

> is "deemed to include a reference to … an order of deportation." Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 309(d)(2), 110 Stat. 3009–627. An "order of deportation," in turn, is defined as an order "concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A). So an "order of removal" must have those same characteristics.
>
> We must therefore identify which order concluded that Riley is "deportable" and commanded his deportation, and it is clear that the qualifying order is the FARO issued by DHS on January 26, 2021. That order held that Riley was deportable and directed that he be removed from the United States.

*Id.* at 267. The Court had already used § 1101(a)(47)(A) to define the term "order of removal" in *Nasrallah*. 590 U.S. at 579. *Riley*, if anything, expanded the definition of "order of removal" to encompass not only an "order of deportation" as defined in the statute but also an order with the "same characteristics."[7]

Notably, *Riley* used the terms "removable" and "removed" interchangeably with "deportable" and "deported." Compare *id.* at 264 ("If the immigration officer finds that the alien is *removable* … the officer issues a FARO specifying the country to which the alien must be *deported*.") (emphasis

---

[7] The withholding-only relief at issue in *Riley* was "deferral of removal," which is temporary relief available to a noncitizen categorically ineligible for permanent CAT relief. 606 U.S. at 265; 8 C.F.R. § 1208.17(a).

added), with *id.* at 267 ("[The FARO] held that Riley was *deportable* and directed that he be *removed* from the United States.") (emphasis added). That choice is consistent with the "statute-wide change in terminology" made by IIRIRA. *Calcano-Martinez v. INS*, 533 U.S. 348, 350 n.1 (2001); see also *Peralta-Cabrera v. Gonzales*, 501 F.3d 837, 839 n.1 (7th Cir. 2007) ("[O]ne of the many changes made was the substitution of the term 'deportation' with 'removal.'").[8]

On its face, E.E.V.'s reinstatement order fits that definition. It is an "order" that declares: "In accordance with [8 U.S.C. § 1231(a)(5)], *you are removable* as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order." (Emphasis added). The next sentence of the order informs E.E.V. how she can "contest *this* determination." (Emphasis added). Her reinstatement order is therefore a "final order of removal" under the definition given in *Riley*. See *Laureano v. Attorney General*, 177 F.4th 453, 457 (3d Cir. 2026) ("[T]he reinstatement order … itself operates to remove [petitioner] from the United States, meeting the definition of a final order of removal."), citing *Riley*, 606 U.S. at 267. After all, E.E.V. cannot again be removed under her original expedited removal order without that order being reinstated. "Once an order has been executed, it cannot be re-executed." *Velazquez-Olais*, 172 F.4th at 538.

---

[8] We do not suggest that the different terminology may never be important, just that it did not matter in *Riley* and does not matter here.

The dissenting opinion contends otherwise: "Reinstatement orders are not defibrillators. I am aware of no statute or case stating that original removal orders are defunct until given life by reinstatement orders." See post at 55. That is essentially what happens, though. A noncitizen who is removed and reenters the country is not removable through reinstatement unless and until an immigration officer determines that she reentered illegally. See 8 U.S.C. § 1231(a)(5). If a noncitizen reenters the country legally—for example, with the consent of the Attorney General, see *Mendoza v. Sessions*, 891 F.3d 672, 679–80 (7th Cir. 2018) and §§ 1182(a)(9)(A)(iii), 1326(a)—then the prior order of removal remains defunct.

There is nothing unusual about our exercising jurisdiction over reinstatement orders. Even the government acknowledges that "the courts of appeals have unanimously exercised jurisdiction over petitions for review of reinstatement orders." Respondent's Reply Br. at 3. Indeed. See *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 150 (2d Cir. 2008); *Laureano*, 177 F.4th at 457; *Tomas-Ramos v. Garland*, 24 F.4th 973, 980 & n.3 (4th Cir. 2022) (treating negative reasonable-fear determination as relevant removal order); *Garcia v. Holder*, 756 F.3d 885, 890 (5th Cir. 2014); *Moreno-Martinez v. Barr*, 932 F.3d 461, 463 (6th Cir. 2019); *Lara-Nieto v. Barr*, 945 F.3d 1054, 1059 (8th Cir. 2019); *Ruiz v. Bondi*, 172 F.4th 673, 676 (9th Cir. 2026); *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1139–40 (10th Cir. 2023); *Avila v. U.S. Attorney General*, 560 F.3d 1281, 1284 (11th Cir. 2009).[9]

---

[9] Some of these cases included explicit or implicit holdings on the *timing* of judicial review that were abrogated by *Riley*.

Against this weight of authority, the government and the
dissenting opinion suggest there is a recent trend challenging
that conclusion. Each one of the cited authorities either agreed
with our holding, did not squarely decide the issue, was not
a majority opinion, is no longer in force, or some combination
of the four. See *F.J.A.P.*, 94 F.4th at 644 (Brennan, J.); *Martinez
v. Garland*, 86 F.4th 561, 568 & n.4 (4th Cir. 2023) ("[W]e leave
that question for another day."), *vacated and remanded*, 145 S.
Ct. 2836 (2025) (in light of *Riley*); *Ruiz-Perez v. Garland*, 49 F.4th
972, 976 (5th Cir. 2022) ("But today is not the day."); *Bhak-
tibhai-Patel v. Garland*, 32 F.4th 180, 195 (2d Cir. 2022) ("[W]e
recognize that an illegal reentrant may obtain judicial review
of DHS's decision to reinstate a prior order of removal …."),
*abrogated in part on other grounds by Riley*, 606 U.S. 259; *Vega-
Anguiano v. Barr*, 982 F.3d 542, 559 (9th Cir. 2019), *as amended*
(2020) (Bennett, J., dissenting from denial of rehearing en
banc) ("An alien subject to reinstatement may petition for ju-
dicial review of the reinstatement order."); *Arostegui-Maldo-
nado*, 75 F.4th at 1149 (Tymkovich, J., concurring) ("[L]ike
most circuits, we treat the reinstatement order as the func-
tional equivalent of an order of removal and therefore retain
jurisdiction to review it."); *Laureano*, 177 F.4th at 472–73
(Matey, J., dissenting).[10]

Under the government's and the dissenting opinion's the-
ory, a reinstatement order is not subject to *any* judicial review
through a petition for review, including even a challenge
based on citizenship. That jurisdictional prohibition would
apply equally to a petition for review that is indisputably
timely. If the government were correct on this point, then a

---

[10] The Fifth Circuit is currently considering this question. See *Martinez
v. Blanche*, No. 25-60400 (5th Cir. Mar. 2, 2026), Dkt. No. 70.

United States citizen wrongfully deported in the past and sub-sequently detained by immigration authorities might lack any way to vindicate in federal court his constitutional right to re-main in the United States.

After all, immigration statutes limit the availability of the writ of habeas corpus, the historical mechanism for United States citizens to assert so-called "nationality claims," in favor of consolidating such questions into a single petition for re-view in the court of appeals. 8 U.S.C. § 1252(a)(2), (4)–(5), (b)(9); cf. *United States v. Wong Kim Ark*, 169 U.S. 649, 653, 696, 705 (1898) (affirming grant of habeas relief to birthright citizen wrongfully refused reentry to United States), citing *Quock Ting v. United States*, 140 U.S. 417 (1891). Notably, for an expe-dited removal order, which is the *only* kind of removal order excluded from the petition for review procedure, judicial re-view of a nationality claim is available through habeas corpus. § 1252(e)(2). Not so for a reinstatement order, though. Nor may a person in removal proceedings or one ordered re-moved seek a declaratory judgment of citizenship in a district court. § 1503(a). Indeed, the statutory provision authorizing the court of appeals to decide a nationality claim on the plead-ings or to transfer it to a district court for factual development presupposes the existence of a "petitioner" who "may have such nationality claim decided only as provided in this para-graph," meaning through a petition for review of a final order of removal. § 1252(b)(5).

Wrongful deportation of United States citizens is not merely a "hypothetical" concern with "vanishingly small" odds, as the dissenting opinion asserts. See post at 56. Case reports show that the government has on several occasions sought to deport citizens through reinstatement and rejected

their nationality claims at every stage until a court stepped in on a petition for review. See *Iracheta v. Holder*, 730 F.3d 419, 421–22, 427 (5th Cir. 2013) (granting United States citizen's petition for review challenging reinstatement of a removal order); *Minasyan v. Gonzales*, 401 F.3d 1069, 1072–74, 1080 (9th Cir. 2005) (same); *Garza-Flores v. Mayorkas*, 38 F.4th 440, 443, 446 (5th Cir. 2022) (ordering hearing on nationality claim on petition for review from reinstatement order); *Batista v. Ashcroft*, 270 F.3d 8, 10–12, 17 (1st Cir. 2001) (habeas corpus petition challenging reinstatement order transferred from district court for treatment as petition for review; ordering hearing on nationality claim). In *Gastelum Chavez v. Barr*, the government pursued reinstatement against a person who had already been acquitted of illegal reentry after presenting a citizenship defense. 773 F. App'x 427, 427–28 (9th Cir. 2019) (non-precedential) (affirming district court's citizenship finding).

In other words, the government's new jurisdictional argument asserts a power for the executive branch to banish, without any access to judicial review, wrongfully deported United States citizens who return to this country. See *Duarte-Ceri v. Holder*, 630 F.3d 83, 89 (2d Cir. 2010) ("The most precious right of citizenship is at stake. The stakes are indeed high and momentous, for deportation is a drastic measure and at times the equivalent of banishment or exile.") (cleaned up), quoting first *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963), then *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947), and then *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948). In fact, if not even a person's identity or the existence of the prior order of removal were subject to judicial review, then the government's jurisdictional theory would allow the executive to banish anyone. We are concerned not merely with clerical errors that the "safeguards" identified by the dissent might sometimes—

but not always—catch. See post at 56. Indeed, various govern-
ments across the world have sought ways to select at will the
"right" people to ship off to the "right" places.[11] Such breath-
taking power for the executive branch in the United States
would fly in the face of both the constitutional allocation of
authority between the branches of government and the mean-
ing of United States citizenship. See *Trump v. Barbara*, 609 U.S.
—, —, 146 S. Ct.—, —, No. 25-365, slip op. at 26 (U.S. June 30,
2026) ("Citizenship, then and now, was the right to have
rights—to freely participate in our political community. The
Framers of the Fourteenth Amendment extended that prom-
ise to 'every free-born person in this land.' We keep that
promise today.") (citation omitted).

We would not easily be persuaded that Congress has im-
plicitly granted the government that power, if it even could
grant such a power. Nothing in *Riley* or any other Supreme
Court decision convinces us to overrule circuit precedent to
do so. We conclude once again that a reinstatement order is a
final order of removal.

B. *Ripeness*

The government's next jurisdictional argument makes a
U-turn, saying these petitions for review should be dismissed
as not yet ripe. That argument asks us to reject the path
charted in *Riley* itself for dealing with the new practical real-
ity, after *Riley*, that a petition for review will almost always

---

[11] See Dareh Gregorian et al., *El Salvador's President Says He Won't Re-
turn Mistakenly Deported Man to U.S.*, NBC News (Apr. 14, 2025),
https://www.nbcnews.com/politics/trump-administration/president-el-
salvador-wont-return-deported-man-kilmar-abrego-garcia-rcna201136.

need to be filed before withholding-only proceedings have
finished:

> The Government's final submission concerns
> the practical problems that it fears will arise if a
> removal order becomes final before the issue of
> withholding-only relief is decided. The Govern-
> ment worries that aliens like Riley who wish
> only to contest removal to their native country
> will not file a petition for review until their re-
> quest for withholding of removal to that desti-
> nation is denied. And if an alien files a petition
> for review before the question of withholding-
> only relief is settled, the Government fears that
> the proceeding in the court of appeals may be
> wrapped up before the BIA denies withholding-
> only relief, and the alien may thus be deprived
> of any judicial review of that denial.

606 U.S. at 271–72. The Court then offered a solution to this
procedural dilemma posed by its holding:

> In a case like this, the Government can inform
> aliens of the need to file a petition within 30
> days after the issuance of a FARO, and *it can
> alert the court of appeals to the pendency of a with-
> holding-only proceeding so that review there can
> wait until that issue is decided*.

606 U.S. at 272 (emphasis added). That is, *Riley* itself recog-
nized and provided a solution for the problem that the gov-
ernment now claims defeats this court's jurisdiction: hold the
petitions pending until withholding-only proceedings con-

clude. So, these petitions are not unripe simply because with-holding-only proceedings remain ongoing.

The government's fallback position, as we understand it, is that these petitions are unripe because withholding-only proceedings have not concluded *and* these petitioners have not (yet) raised substantive challenges to their final orders of removal, meaning at present there is nothing for this court to decide. This argument fails for three independent reasons.

First, even if the government were correct that a challenge to the final order of removal is required, these petitioners may well have one. These petitions are not yet at the merits stage. Petitioners have not yet been required to lay out the arguments they intend to pursue. Counsel indicated in the briefing and again at oral argument that either or both petitioners may challenge their final orders of removal. The government offers no reason not to credit those assertions.

Second, and more fundamental, we are considering here the government's motions to dismiss these petitions because they were supposedly filed *too late*—the opposite of unripe. The government's self-contradictory arguments signal that something is seriously amiss with the government's theories. Its position amounts to "a heads I win, tails you lose, propo-sition, which the law would be unlikely to countenance." *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 931 (7th Cir. 2011) (also concerning timing for bringing court action).

Third, nothing in *Riley* suggested that its approval of placeholder petitions for review depended on the petitioner challenging the final order of removal itself. Riley himself "did not contest his removal from the United States"—that is, "it was undisputed that Riley had been convicted of an aggra-

vated felony"—"but he resisted return to Jamaica under the [CAT]." 606 U.S. at 264. While addressing the "practical problems" posed by removal orders becoming final before withholding-only proceedings conclude, the Court offered a path forward for noncitizens "like Riley who wish *only* to contest removal to their native country." *Id.* at 271 (emphasis added). And then the Court remanded for further proceedings. *Id.* at 277. Whether these statements amount to an implicit holding or not, we cannot distinguish *Riley* based on a factor present in *Riley* itself. As the Third Circuit wrote in *Laureano*, "the Supreme Court [in *Riley*] had no doubt that courts of appeals have jurisdiction to review withholding-only rulings independent of any substantive review of final orders of removal." 177 F.4th at 458 (footnote omitted).[12]

The government relies on two cases in support of its position. Neither provides persuasive support. In *Navarrete v.*

---

[12] The concurrence in *Riley* does not help the government either. Justice Thomas observed that "Riley has never petitioned for judicial review of a final order of removal" because he petitioned from the Board's CAT denial. 606 U.S. at 280 (Thomas, J., concurring). Riley's action was consistent with a line of cases in the Fourth Circuit, where his case arose, treating the denial of withholding-only relief as itself the final order of removal, rather than as the step that makes a removal order *become final*. See *Martinez*, 86 F.4th at 568 ("[O]ur Court has considered the ruling at the last available stage of agency review to be 'the agency's "final order" for purposes of judicial review.'"), quoting *Tomas-Ramos*, 24 F.4th at 980 n.3.

As the concurrence in *Riley* noted, "Congress has specified that federal courts of appeals lack jurisdiction to review CAT orders 'except *as part of* the review of a final order of removal.'" 606 U.S. at 278 (Thomas, J., concurring), quoting FARRA, § 2242(d), 112 Stat. 2681–822. But the concurrence never suggested that "review of a final order of removal" requires a substantive challenge to that order of removal on top of a challenge to the denial of withholding-only relief.

*Bondi*, the petitioner incorrectly filed a petition for review from a negative reasonable-fear determination, not the reinstatement order under which he was to be removed. 170 F.4th 1214, 1219 (9th Cir. 2026). Then he sought the court's leave to amend his petition to raise a "nominal" challenge to his removal order, which the court denied as futile. *Id.* at 1224. We do not disagree with the outcome of *Navarrete*. *Riley* clearly requires a would-be petitioner to file a petition for review of a final order of removal, not from the denial of withholding-only relief. By contrast, the petitioners before us properly filed their petitions for review from their final orders of removal.

Insofar as certain statements in *Navarrete* could be read to require a challenge to a final order of removal in order to secure judicial review of withholding-only relief in all circumstances—a position adopted by the other case the government cites, *Hayles v. U.S. Attorney General*, ___ F.4th ___, 2026 WL 1782580 (11th Cir. 2026)—that analysis rests on shaky ground. To start, the petitioner in *Riley* itself raised no such challenge, and at least this court and the Ninth and Eleventh Circuits have exercised jurisdiction over petitions challenging only the denial of withholding-only relief. See *F.J.A.P.*, 94 F.4th at 624–25; *De Leon v. Garland*, 51 F.4th 992, 998, 1008 (9th Cir. 2022); *Rodriguez v. U.S. Attorney General*, 735 F.3d 1302, 1305 (11th Cir. 2013).[13]

Some language in *Navarrete* seems, with respect, to go astray insofar as it overreads the conclusion in *Nasrallah* that a denial of CAT relief "does not affect the validity of the final

---

[13] *Navarrete* did not suggest that a substantive challenge to *removability* is required, a proposition squarely foreclosed by *Monsalvo v. Bondi*, 604 U.S. 712, 722 (2025). See 170 F.4th at 1223.

order of removal and therefore does not merge into the final order of removal." 170 F.4th at 1221, quoting 590 U.S. at 582. "Merger" and "validity" are not the relevant questions under the zipper clause, as we explained above. A claim of entitlement to CAT relief presents "questions of law and fact … arising from" removal proceedings, which both *Navarrete* and *Hayles* acknowledged. 170 F.4th at 1220; ___ F.4th at ___, 2026 WL 1782580, at *3.

The missing analytical step is that both *Navarrete* and *Hayles* assumed that judicial review of a final order of removal requires a substantive challenge to a removal order even if the real focus of the petitioner's case is withholding-only relief. *Navarrete*, 170 F.4th at 1221–22 ("[W]e have not been granted any jurisdiction to hear CAT claims independent of challenges to final orders of removal."); *Hayles*, ___ F.4th at ___, 2026 WL 1782580, at *3–4 ("[O]ur review of CAT claims may come only through a review of [a] final order."). That proposition is not supported by *Nasrallah* or *Riley*. And neither *Navarrete* nor *Hayles* explains the assumption. *Navarrete* seemed to be searching for a justification when it cited a leading treatise on federal procedure for the proposition that "the only jurisdiction to review CAT orders is a 'pendent jurisdiction' requiring 'an independent basis of federal subject matter jurisdiction' under 8 U.S.C. § 1252(a)(1)—specifically, a petition for review of a final order of removal." 170 F.4th at 1222, quoting 13 Wright & Miller, Federal Practice & Procedure § 3523 (3d ed. 2025). Then, *Navarrete* concluded that the substantive challenge to the removal order must be "colorable" because a frivolous claim is insufficient to invoke a federal court's jurisdiction. *Id.* at 1224; see also *In re African-American Slave Descendants Litig.*, 471 F.3d 754, 757–58 (7th Cir. 2006) (no supplemental jurisdiction based on frivolous federal law claim).

Equating pendent jurisdiction in a multi-claim civil action with jurisdiction over a petition for review in immigration law does not follow. That logical leap was elided in *Navarrete* by the careful use of a "*cf.*" signal to cite a section of the Wright & Miller treatise that concerns neither immigration law in general nor the zipper clause in particular. *Navarrete* cited no authorities explicitly drawing that analogy.

Congress has confirmed more than once that CAT orders are subject to judicial review. See *Nasrallah*, 590 U.S. at 585. It has done so through legislation drafted against the backdrop that, until only a few years ago, courts uniformly treated the denial of withholding-only relief as the triggering event for the deadline to file a petition for review. See *F.J.A.P.*, 94 F.4th at 628–29. That means ripeness was not relevant then in the way it now could be after *Riley*. Petitioners here represent that "[p]ractically speaking, th[e] deadline will pass long before applications for protection will have been adjudicated, and often before withholding-only proceedings have even begun." Petitioners' Br. at 2. That looks to be true. The fastest resolution to a claim for CAT relief is when the immigration judge affirms a negative reasonable-fear determination. In M.C.C.-G.'s case, however, the judge took over two months to decide. And if the noncitizen receives a positive determination, withholding-only proceedings will not conclude even close to the deadline. E.E.V.'s withholding-only proceedings began in February 2017 and remain pending today.

Congress knows how to exclude certain noncitizens from eligibility for seeking CAT relief. It has done so only for a few narrow categories. FARRA, § 2242(c), 112 Stat. 2681–822. Those categories are, essentially, "serious" criminals, spies, persecutors, and Nazi concentration camp guards. See 8

U.S.C. §§ 1182(a)(3)(E), 1227(a)(4)(D), 1231(b)(3)(B). Congress also knows how to foreclose judicial review of orders denying CAT relief for certain classes of noncitizens. It has done so for noncitizens subject to expedited removal orders. They cannot seek judicial review of negative credible-fear determinations or, if referred to an immigration judge for withholding-only proceedings, denials of relief by the Board. See *Nasrallah*, 590 U.S. at 586 n.5 ("In *expedited* removal proceedings, the immigration laws do not provide for any judicial review of CAT claims. Our ruling today does not affect that law.") (citations omitted). Congress has certainly not foreclosed judicial review for noncitizens subject to reinstatement orders and final administrative removal orders. But because such individuals often (but not always) lack any basis on which to contest removal, the government's rule would exclude many of them from seeking judicial review too, regardless of timing.

Accordingly, we decline the government's invitation, contrary to *Riley* and inconsistent with the practice of this and every other circuit, to conclude that Congress has silently foreclosed judicial review of the denial of withholding-only relief to a noncitizen who does not also challenge substantively a final order of removal.

III. *Timeliness*

So we have jurisdiction over these petitions for judicial review. We now arrive at the original heart of the matter. The government argues that these petitions for review should be dismissed as untimely. To recall, § 1252(b)(1) says that a "petition for review must be filed not later than 30 days after the date of the final order of removal." E.E.V.'s reinstatement order was issued on August 27, 2015, and M.C.C.-G.'s final administrative removal order was issued on May 12, 2025. They

did not file petitions for review until July 24 and July 26, 2025, respectively, so neither filed within the thirty-day deadline as measured in *Riley*. The government contends that, even though *Riley* held the deadline is not jurisdictional, it is nonetheless not subject to equitable tolling and must be enforced if properly raised. Petitioners argue that equitable tolling is available under the statute and appropriate in these circumstances. We agree with petitioners on both points.

A. *Availability of Equitable Tolling*

*Riley* did not address the availability of equitable tolling because it did not need to. Instead, the Court noted that "because the Government does not wish to press that ground for dismissal, it does not preclude this case from proceeding on remand." 606 U.S. at 277. In other words, the government waived the deadline, so the *Riley* case itself could proceed. And the *Riley* majority did not respond to the partial dissent's prediction that "standard principles of equitable tolling … are likely available." 606 U.S. at 302–03 (Sotomayor, J., dissenting in part).[14]

Simply put, *Riley* left open the availability of equitable tolling. The dissenting opinion relies on language in *Riley* describing the question presented as whether § 1252(b)(1) "is a jurisdictional requirement or simply a mandatory claim-pro-

---

[14] The government's brief in this case twice suggests, if not outright argues, that the majority's statement is an implied holding about the availability of equitable tolling. See Respondent's Br. at 18–19, 26–27. We think not. The proposition that waiver means the case may proceed does not imply that lack of waiver means the case otherwise may not proceed; that logical fallacy is known as "denying the antecedent." See *NLRB v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring in the judgment). *Riley* simply did not need to decide the issue.

cessing rule," 606 U.S. at 263, to conclude that the Court has already foreclosed equitable tolling. See *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019) (suggesting "mandatory" rules are never subject to equitable tolling); but see *Fort Bend County v. Davis*, 587 U.S. 541, 549 n.5 (2019) (noting court has reserved whether mandatory rules could ever allow equitable exceptions).

The government's reasoning is not persuasive. The Court used the phrase "claim[s]-processing rule" two other times in *Riley*, in neither instance attached to the word "mandatory." See 606 U.S. at 273–74 (Riley and government have "better argument" that § 1252(b)(1) is a "quintessential claim-processing rule") (alteration omitted); *id.* at 275 ("Our precedents extending back nearly 20 years support classifying § 1252(b)(1)'s filing deadline as a claims-processing rule."). More critically, the majority opinion in *Riley* did not engage in any of the analysis the Court has used in the past to decide when equitable tolling is available. See *id.* at 272–77.

The Sixth Circuit has since addressed the issue in *Oxlaj-Perez v. Blanche*, 174 F.4th 516, 520 (6th Cir. 2026), and found equitable tolling available. The Fifth Circuit in *Liao v. Bondi*, 162 F.4th 519, 524 (5th Cir. 2025), characterized § 1252(b)(1) as "a mandatory claim-processing rule that, if properly raised, must be enforced," though as in *Riley*, the opinion did not expressly address equitable tolling. We agree with the Sixth Circuit that equitable tolling is—indeed must be—available here.[15]

---

[15] Other circuits have discussed the availability of equitable tolling after *Riley* in non-precedential orders. *Ordonez-Vasquez v. U.S. Attorney General*, No. 24-11994, 2025 WL 1795050, at *2, *4 & n.4 (11th Cir. June 30, 2025)

The Supreme Court has taught consistently for decades that non-jurisdictional statutes of limitations are subject to a rebuttable presumption in favor of allowing equitable tolling in appropriate cases. E.g., *Enbridge Energy, LP v. Nessel ex rel. Michigan*, 608 U.S. ___, ___, 146 S. Ct. 1074, 1082 (2026); *Harrow v. Department of Defense*, 601 U.S. 480, 489 (2024); *Arellano v. McDonough*, 598 U.S. 1, 6–7 (2023); *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 208–09 (2022); *United States v. Wong*, 575 U.S. 402, 407–08 (2015); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10–11 (2014); *Holland v. Florida*, 560 U.S. 631, 645–46 (2010); *Young v. United States*, 535 U.S. 43, 49–50 (2002); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). The thirty-day deadline for filing a petition for review of a final order of removal is a statute of limitations because it "prescribes a period within which certain rights … may be enforced." *Young*, 535 U.S. at 47.

The presumption is not overcome in this case. We start with petitioners' observations that the deadline is quite short and directed at them, not at the court, both of which do "nothing to rebut the presumption" in favor of equitable tolling. *Boechler*, 596 U.S. at 209. In line with the Court's recent decision in *Enbridge*, we also acknowledge but give less weight to the government's observation that the statute speaks in man-

---

(relying on pre-*Riley* precedent treating deadline as jurisdictional and acknowledging only that the Court granted certiorari in *Riley*, even though the opinion had already been released); *In re Asemani*, No. 25-1513, 2025 WL 1823953, at *1 (4th Cir. July 2, 2025) (relying on pre-*Riley* precedent vacated and remanded same day *Riley* was decided); *Zeledon v. Bondi*, No. 24-4763, 2025 WL 2375227, at *1 (9th Cir. Aug. 15, 2025) (not deciding issue since not sufficiently raised); *Rodriguez-Novoa v. Bondi*, No. 24-1153, 2026 WL 617096, at *1 (2d Cir. Mar. 5, 2026) (not deciding issue since petition was meritless).

datory terms. Such language "is at least *consistent* with treating its deadline as mandatory and not subject to equitable tolling," but *Enbridge* makes clear that such language is "not *sufficient*, on its own, to rebut the presumption." 608 U.S. at ___, 146 S. Ct. at 1082 (emphasis added). We therefore view the "plain language of the statute" as equivocal with respect to equitable tolling, and certainly not enough on its own to "displace the presumption of tolling." *Oxlaj-Perez*, 174 F.4th at 523.

We look next to the expansive and grave "nature of the subject matter," which makes it unlikely that Congress meant to forbid equitable tolling. See *Enbridge*, 608 U.S. at ___, 146 S. Ct. at 1084, quoting *Arellano*, 598 U.S. at 14. Although *Enbridge* and *Arellano* used the subject matter of the statutes in those cases merely as "garnish," that factor is far stronger here. In *Holland*, the Court noted that the presumption in favor of equitable tolling applied with special force in the context of habeas corpus, which has traditionally been governed by equitable principles. 560 U.S. at 646. Section 1252 implicates habeas corpus because it channels judicial review of CAT denials and nationality claims away from habeas and into a petition for review of a final order of removal. 8 U.S.C. § 1252(a)(4)–(5), (b)(5), (b)(9), (e)(2), (g).

The stakes in these cases are whether a person will be removed to a country where she faces persecution, torture, or worse. In some cases the issue will be United States citizenship. In many of these circumstances, a petition for review is the only mechanism Congress has provided for a person to argue her claims before Article III judges. The government contends that executive branch "employees" who handle many immigration cases are bound to obey the personal legal opinions of the President and the Attorney General, and it

considers immigration judges to be removable at will. See
Exec. Order No. 14215, § 7, 90 Fed. Reg. 10447, 10448–49 (Feb.
18, 2025) ("The President and the Attorney General's opinions
on questions of law are controlling on all employees in the
conduct of their official duties."); *Jackler & Jaroch Consolidation
v. Dep't of Justice*, 2026 MSPB 3, ¶ 21 (Mar. 20, 2026) (conclud-
ing immigration judges lack civil service protections), *petition
for review docketed sub nom. and hearing en banc granted*, *Jackler
v. MSPB*, No. 26-1575 (Fed. Cir.). As in *Holland*, the constitu-
tional and human importance of such claims "counsels hesi-
tancy before interpreting … statutory silence as indicating a
congressional intent to close courthouse doors that a strong
equitable claim would ordinarily keep open." 560 U.S. at
649.[16]

The government asserts that practical interests specific to
immigration law cut against recognizing "case-specific excep-
tions and individualized equities." It also warns that recog-
nizing equitable tolling will invite spurious untimely peti-
tions filed merely to delay removal. Respondent's Br. at 43.
We are not persuaded.

---

[16] This is an observation about congressional intent, not a holding
about unraised Suspension Clause issues. On its face, the carve-out for
questions of law and constitutional claims does not apply to any jurisdic-
tion-stripping provisions in § 1252 itself except for the criminal alien bar
and the prohibition on judicial review of discretionary forms of relief. 8
U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any
other provision of this chapter (*other than this section*) which limits or elim-
inates judicial review, shall be construed as precluding review of consti-
tutional claims or questions of law raised upon a petition for review filed
with an appropriate court of appeals in accordance with this section.")
(emphasis added).

First, because Congress provided for judicial review of CAT claims and did not extinguish review through habeas of nationality claims challenging expedited removal orders (which are excluded from petitions for review), we know it "did not seek to end every possible delay at all costs." See *Holland*, 560 U.S. at 649 (making this point in habeas context). True, E.E.V. has remained in this country for nearly a decade after her reinstatement order was issued. Such delays may be mystifying for those outside the nation's immigration bureaucracies, but we have no reason to think E.E.V. is responsible for the delays. And the government need not wait for an untimely petition before effectuating removal. *Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021). Further, the government's argument is undercut by the availability of equitable tolling for other immigration law deadlines. The thirty-day statutory deadline to file a motion to reconsider with the Board is subject to equitable tolling. *Hernandez-Alvarez v. Barr*, 982 F.3d 1088, 1095 (7th Cir. 2020); see 8 U.S.C. § 1229a(c)(6)(B). So is the ninety-day statutory deadline to file a motion to reopen with the Board. *Hernandez-Alvarez*, 982 F.3d at 1096; see § 1229a(c)(7)(C). The Board's own precedents allow equitable tolling of the thirty-day regulatory deadline to file a notice of appeal of an immigration judge's decision. *Matter of Morales-Morales*, 28 I. & N. Dec. 714, 716–17 (BIA 2023); see 8 C.F.R. § 1003.38(b).

As for practical concerns specific to withholding-only proceedings, the new reality after *Riley* is that a petition for review will almost always come due long before withholding-only proceedings end. Under those circumstances, tolling the deadline to a date when the agency still has not decided the claim leads to no additional delay. For untimely petitions that may actually cause delay, the appropriateness of equitable

tolling might be resolved quickly through a motion to dismiss, which need not address any other issues.

Moreover, and in stark contrast to the "decisive" feature of the statute in *Enbridge*, where the presumption of equitable tolling was rebutted, the thirty-day deadline at issue here lacks not only exceptions sounding in equity, but any exceptions at all. See 608 U.S. at ___, 146 S. Ct. at 1082; see also *Arellano*, 598 U.S. at 7 ("[38 U.S.C. § 5110] contains detailed instructions for when a veteran's claim for benefits may enjoy an effective date earlier than the one provided by the default rule. It would be inconsistent with this comprehensive scheme for an adjudicator to extend effective dates still further through the doctrine of equitable tolling.").

Congress did not specifically provide relief from the deadline if, for example, immigration authorities unlawfully delay, frustrate, or prevent a noncitizen from filing a timely petition for review. Federal courts have recently found that immigration officials engaged in the following examples of conduct that might warrant equitable tolling of missed deadlines:

- Denying access to an attorney during detention, including by denying visits, phone calls, mail, or email, shuffling detainees between various facilities across the country without notice, and coercing detainees into signing voluntary removal forms before consulting an attorney. See *Perdomo v. Noem*, 815 F. Supp. 3d 1057, 1067–71 (C.D. Cal. 2025), *appeal docketed*, No. 26-209 (9th Cir.); *Advocates for Human Rights v. U.S. Dep't of Homeland Security*, 825 F. Supp. 3d 858, 868–74 (D. Minn. 2026), *appeal docketed*, No. 26-2064 (8th Cir.).

- Dumping the noncitizen onto the street hundreds of miles from home without her personal property or identification documents. See *S.J. v. Bondi*, ___ F. Supp. 3d ___, 2026 WL 490104, at *1 (D. Minn. Feb. 20, 2026), *appeal docketed sub nom.*, *Jimenez v. Isihara*, No. 26-1327 (8th Cir.).

- Designating removal to a third country over thirty days after a final order of removal because the noncitizen obtained withholding-only relief as to his home country, but doing so without notice and without informing him of the right to undergo another reasonable-fear interview. See, e.g., *Abrego Garcia v. Noem*, 811 F. Supp. 3d 741, 746–54 (D. Md. 2025) (recounting government's "extraordinary" attempts to remove El Salvadoran national to Uganda, Eswatini, Ghana, and Liberia), *appeal docketed*, No. 26-6466 (4th Cir.); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1065–67 (W.D. Wash. 2025) (granting habeas relief; government attempted to remove Indian national, an HIV-positive gay man, to Uganda); *Mbaba v. Perez*, No. 26-cv-00070, 2026 WL 917484, at *1–3 (S.D. Tex. Feb. 13, 2026) (enjoining removal to Equatorial Guinea of Mauritanian national who escaped chattel slavery).[17]

---

[17] These are all district court decisions. Some did not involve orders of removal, and many of them granted habeas relief. We express no view on their merits, nor on the Ninth Circuit's observation in a Federal Tort Claims Act case that a Cuban national granted withholding of removal whom the government later sought to remove to Mexico "could not have contested this decision through the normal petition-for-review process be-

The last group of cases cannot be attributed to mistakes. "The Department of Homeland Security has adopted a policy whereby it may take people and drop them off in parts unknown—in so-called 'third countries'—and, 'as long as the Department doesn't already know that there's someone standing there waiting to shoot … that's fine." *D.V.D. v. U.S. Dep't of Homeland Security*, 821 F. Supp. 3d 102, 117 (D. Mass. 2026) (alteration in original), *appeal docketed*, No. 26-1212 (1st Cir.), *prior order stayed*, 145 S. Ct. 2153, *and clarification granted*, 145 S. Ct. 2627.

Nor is the deadline incorporated into other statutes with specific allowances for exceptions, as the United States Code does three times with the thirty-day deadline for removal of civil actions to federal court at issue in *Enbridge*. 608 U.S. at ___, 146 S. Ct. at 1083. The only equitable-seeming exception to any related statutory deadline cited by the government here applies to statutory *briefing* deadlines. The court "may not extend these deadlines except upon motion for good cause shown" and, if they are not met, the petition must be dismissed "unless a manifest injustice would result." 8 U.S.C. § 1252(b)(3)(C).

This solitary provision concerning briefing schedules does not persuade us that Congress meant to prohibit equitable tolling of the time to file a petition for review, regardless of the equities in a particular case. Section 1252 sets bespoke statutory briefing deadlines and makes them subject to extension by the court based on "good cause." That is the same standard

---

cause it was made after his removal proceedings had ended." *Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025). We cite these cases to show examples of potential grounds for equitable tolling and to illustrate the stakes if access to judicial review were cut off by such actions.

for extending the default briefing deadline provided by the
federal rules in other cases. See Fed. R. App. P. 2(a), 31(a).
Granting the court the authority to change briefing deadlines
for petitions for review on the same standard as it may alter
briefing deadlines set by the federal rules suggests nothing
about equitable exceptions for the deadline to file the petition
in the first place.

Careful attention to the differences between rules and stat-
utes, and between the interaction of different rules with stat-
utes, is also why we find unconvincing the government's re-
liance on *Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2019). In
*Nutraceutical*, the Court held that the fourteen-day deadline to
seek a discretionary interlocutory appeal of a grant or denial
of class certification under Rule 23(f) is not subject to equita-
ble tolling. *Id.* at 189–90. The Court began by noting where the
deadline comes from: "Because Rule 23(f)'s time limitation is
found in a procedural rule, not a statute, it is properly classi-
fied as a nonjurisdictional claim-processing rule." *Id.* at 192.
Then, the Court noted that "some claim-processing rules are
'mandatory'—that is, they are '"unalterable"' if properly
raised by an opposing party." *Id.*, quoting *Manrique v. United
States*, 581 U.S. 116, 121 (2017), quoting in turn *Eberhart v.
United States*, 546 U.S. 12, 15 (2005). Critical to the Court's con-
clusion that Rule 23(f) is such a mandatory rule not subject to
equitable tolling is that "the Federal Rules of Appellate Pro-
cedure single out Civil Rule 23(f) for inflexible treatment." *Id.*
at 193. That is:

> While Appellate Rule 2 authorizes a court of ap-
> peals for good cause to "suspend any provision
> of these rules in a particular case," it does so
> with a conspicuous caveat: "except as otherwise

provided in Rule 26(b)." Appellate Rule 26(b), which generally authorizes extensions of time, in turn includes this express carveout: A court of appeals "may not extend the time to file … a petition for permission to appeal." Fed. Rule App. Proc. 26(b)(1). In other words, Appellate Rule 26(b) says that the deadline for the precise type of filing at issue here may not be extended. The Rules thus express a clear intent to compel rigorous enforcement of Rule 23(f)'s deadline, even where good cause for equitable tolling might otherwise exist.

*Id.* (alteration in original).

Appellate Rule 26(b) reads in full:

*Extending Time*. For good cause, the court may extend the time prescribed by these rules or by its order to perform any act, or may permit an act to be done after that time expires. But the court may not extend the time to file:

(1) a notice of appeal (except as authorized in Rule 4) or a petition for permission to appeal; or

(2) a notice of appeal from or a petition to enjoin, set aside, suspend, modify, enforce, or otherwise review an order of an administrative agency, board, commission, or officer of the United States, unless specifically authorized by law.

To begin, if any part of Rule 26(b) is relevant to this case, it is not Rule 26(b)(1)'s absolute prohibition on extensions of time to file discretionary interlocutory appeals that was ad-

dressed in *Nutraceutical*. Here we address instead the qualified prohibition in Rule 26(b)(2), which allows extension when "specifically authorized by law."

The presumption in favor of equitable tolling of statutes of limitation drafted by Congress is law. It applies to petitions for review of agency action. See *Boechler*, 596 U.S. at 202–03, 209 (petition for review of tax levy); *Harrow*, 601 U.S. at 482 (petition for review of Merit System Protection Board order); *Nelson v. SEC*, 138 F.4th 514, 517, 523 (D.C. Cir. 2025) (petition for review of whistleblower award; "As we have previously stressed, however, the presumption of equitable tolling applies to deadlines pertaining to petitions for review."). We agree with both the Sixth and D.C. Circuits that Rule 26(b)(2)'s "specifically authorized" language does not override the presumption in favor of equitable tolling for statutory deadlines. *Oxlaj-Perez*, 174 F.4th at 527; *Nelson*, 138 F.4th at 523.

Moreover, we need not read either part of Rule 26(b) to apply to statutory deadlines for petitions for review in the first place. See *Oxlaj-Perez*, 174 F.4th at 527 ("But *Nutraceutical*'s analysis of Rule 23(f) is inapposite here. There was no presumption of tolling in *Nutraceutical* because the case involved only a Federal Rule of Civil Procedure."). Rule 26(b) is an exception to Rule 2(a), which authorizes the court of appeals, in order "to expedite its decision or for other good cause—[to] suspend any provision *of these rules* in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b)." (Emphasis added.) Rule 26(b) clarifies that the power to suspend the rules includes the power to "extend the time prescribed by these rules or by its order to perform any act" or to "permit an act to be done after that time expires," with the two exceptions given above. Once

again, however, § 1252(b)(1) is a statute, not a deadline pre-
scribed by the Federal Rules of Appellate Procedure or by the
order of the court. The only rules-based deadline applicable
to petitions for review itself incorporates whatever deadline
is set by the statute: "Review of an agency order is com-
menced by filing, *within the time prescribed by law*, a petition
for review …." Fed. R. App. P. 15(a)(1) (emphasis added). The
"time prescribed by law" includes the time during which the
statute of limitation may be tolled, if the statute itself allows
equitable tolling.

Rule 26(b)(2) prohibits a court from suspending the rules
under Rule 2(a) to grant an extension of time for a petition for
review under the more forgiving standard of "good cause,"
regardless of whether equitable tolling is available under the
statute or appropriate under the circumstances. In the absence
of Rule 26(b)(2) the court would seem to have the power to
apply the more lenient "good cause" standard. But suspen-
sion of the rules for "good cause" is unnecessary if equitable
tolling is available under the statute and therefore available
under Rule 15(a) as well. Nor would we expect an exception
to the court's authority to suspend the rules to override some-
how both the statute and Rule 15(a).

The thirty-day deadline to file a petition for review under
§ 1252(b)(1) is subject to equitable tolling.[18]

---

[18] The government's argument that *Riley* should be given "retroactive
effect" is beside the point. See *Harper v. Virginia Dep't of Taxation*, 509 U.S.
86, 97 (1993). Our holding on timeliness assumes that *Riley* has full retro-
active effect. Otherwise, we would not spend so much time on the availa-
bility of equitable tolling under the statute or, below, on its appropriate-
ness in these cases. Instead, we would apply *F.J.A.P.* rather than *Riley*, dis-
miss these petitions as untimely under pre-*Riley* precedent, and require

B. *Appropriateness of Tolling*

A party seeking equitable tolling must meet the high bar of showing that it is appropriate in her particular case. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). These petitions for review are among the rare cases where those conditions are met.[19]

Both petitioners have diligently pursued their rights, including their rights to judicial review. The government has not suggested that either petitioner has failed to participate diligently in withholding-only proceedings. Petitioners have also acted diligently in this court since filing their petitions for review, including responding to the government's motions and meeting all briefing deadlines in these consolidated proceedings. The only question is whether they acted diligently between receiving their final orders of removal and filing the petitions.

If petitioners had filed these petitions for judicial review within thirty days of their final orders of removal in August 2015 and May 2025, circuit precedent would have required this court to dismiss them as unripe. *F.J.A.P.*, 94 F.4th at 636, citing Order, *Delgado-Arteaga v. Lynch*, No. 15-1810 (7th Cir.

petitioners to file fresh petitions after the conclusion of withholding-only proceedings—exactly what the government would have asked us to do if they had filed timely petitions before *Riley* was decided. See *F.J.A.P.*, 94 F.4th at 636. That is not what we have done.

[19] We do not need to address the "unique circumstances" doctrine argued by petitioners. See *Bowles v. Russell*, 551 U.S. 205, 213–14 (2007).

Aug. 7, 2015), Dkt. No. 11 (granting motion to dismiss); see also *Eke v. Mukasey*, 512 F.3d 372, 377–78 (7th Cir. 2008) ("We are satisfied that the Attorney General is correct that the immigration authorities were not finished with Eke's case until the BIA's final decision [on withholding-only relief] …."). Then, when *Riley* abrogated *F.J.A.P.* and immediately put E.E.V. and M.C.C.-G. outside the thirty-day window, both filed their petitions for review within thirty days. Both petitioners acted with the necessary diligence.[20]

The Supreme Court appears to have left open whether reliance on binding precedent that is later overruled can qualify as an extraordinary circumstance to justify equitable tolling. See *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 253, 257–58, 258 n.4 (2016) (noting litigant's mistake in relying on district court decision that was not appealed is "quite different from relying on *actually binding* precedent that is subsequently reversed," but not deciding if the latter may justify equitable tolling), *aff'g* 764 F.3d 51, 62 (D.C. Cir. 2014) (suggesting availability of equitable tolling for reliance on binding precedent for "deciding when and how to file" claims). This court's discussion of *Menominee Indian Tribe* in *Evans v. United States* also seems to leave this question open:

> What is more, as the Supreme Court stated in *Menominee Indian Tribe of Wisconsin v. United States*, misreading case precedent is "fundamentally no different from a garden variety claim of excusable neglect[.]" 577 U.S. 250, 257–

---

[20] We do not decide or imply whether noncitizens in these petitioners' situation were required to file petitions for judicial review within thirty days after *Riley* was decided to establish equitable tolling.

> 58 (2016) (internal quotation marks omitted)
> (distinguishing cases in which a party relies on
> binding precedent that is subsequently re-
> versed).

132 F.4th 473, 480 (7th Cir. 2025) (alteration in original).

Other circuits have addressed similar issues about when to file claims in habeas corpus cases, and we find their thinking instructive. In *Harris v. Carter*, when the petitioner was convicted, then-binding circuit precedent held that an untimely state court post-conviction petition was "properly filed" and therefore tolled the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d). 515 F.3d 1051, 1052–53 (9th Cir. 2008), citing *Dictado v. Ducharme*, 244 F.3d 724, 727–28 (9th Cir. 2001). The Supreme Court abrogated *Dictado* in *Pace*, but Pace himself had not acted with the necessary diligence. The Court did not decide if its holding created an extraordinary circumstance for prisoners who "detrimentally relied" on prior circuit case law. 544 U.S. at 418. The Ninth Circuit noted in *Harris* that such reliance was "not the result of oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling." 515 F.3d at 1055. Rather, the court wrote:

> The Supreme Court's overruling of the *Dictado* rule made it *impossible* for Harris to file a timely petition. Harris' petition became time-barred the moment that *Pace* was decided. Finally, Harris had no control over the operative fact that caused his petition to become untimely—the Supreme Court's decision in *Pace*. These are precisely the circumstances in

> which equitable principles justify tolling of the
> statute of limitations.

*Id.* at 1056 (emphasis added).

Similarly, in *Sherwood v. Prelesnik*, the Sixth Circuit addressed another change in the law concerning the same statute at issue in *Harris* that also led to an untimely habeas corpus petition. 579 F.3d 581 (6th Cir. 2009). In *Sherwood*, a new Supreme Court decision abrogated a Sixth Circuit precedent and held that filing a petition for certiorari after the state court of last resort denied relief did *not* toll the federal statute of limitations. *Id.* at 583–84, 588, citing *Lawrence v. Florida*, 549 U.S. 327, 337 (2007), *abrogating Abela v. Martin*, 348 F.3d 164, 172–73 (6th Cir. 2003) (en banc). Sherwood had relied on *Abela* in waiting 363 days after his conviction became final to file his application for state post-conviction relief, meaning he went from having ninety days after the Michigan Supreme Court denied reconsideration to having just two days. See *id.* at 584, 588. The Sixth Circuit concluded that equitable tolling was appropriate because *Abela* had "assured" Sherwood of an additional ninety days when he made the "crucial decision" to seek state post-conviction relief rather than file a habeas petition in federal court. *Id.* at 588–89. The court quoted Sherwood's brief: "By the time the rules changed, counsel had effectively no opportunity to alter the course of Mr. Sherwood's 'ship.'" *Id.* at 588.

We agree with the reasoning of *Harris* and *Sherwood* and find it applies here. A change in binding case law that makes it impracticable, as in *Sherwood*, or impossible, as in *Harris*, for a party ever to have timely sought relief can constitute an extraordinary circumstance for the purpose of equitable tolling. A person who relies in good faith on binding precedent in de-

ciding *when* to bring a claim or to seek judicial review would have no discernible reason to challenge settled case law just to advance the timing of a case that he reasonably expected to be able to bring later.

In the government's view, however, E.E.V. should have realized that her reinstatement order became final upon issuance back in 2015. That would have been contrary to then-settled case law in this circuit and in every other circuit. See *F.J.A.P.*, 94 F.4th at 628–29. Then she should have filed a petition for review and tried to convince this court we were wrong about the deadline. In fact, at that time, *the government itself* would have moved to dismiss her premature petition, and we would have granted the motion. See, e.g., Order, *Baatarjav v. Garland*, No. 21-1191 (7th Cir. Apr. 9, 2021), ECF 14; Order, *Lorenzo-Avila v. Whitaker*, No. 18-3589 (7th Cir. Dec. 14, 2018), ECF 5; Order, *Atisele v. Lynch*, No. 15-1183 (7th Cir. July 22, 2015), ECF 29. And even if E.E.V. had won that then-improbable argument, in the best-case scenario she would have ended up with a placeholder petition for review pending the conclusion of withholding-only proceedings. That's the same situation she is in now. For someone in her position, that was not a fight worth picking.

Moreover, by the logic of the government's argument, *every* other noncitizen in the same situation in the years before *Riley* was decided should have done the *same thing*: file a petition for review that would have been premature under binding precedent, asking us to reconsider that precedent. And to what end? Parties are of course free to urge us to reconsider circuit precedent, but we do not respond with limitless pa-

tience to repeated, futile efforts to overturn circuit precedent.[21]

The equities here are clear-cut. E.E.V. and M.C.C.-G. relied on this court's binding precedent in deciding when to seek judicial review. Then, the Supreme Court decided *Riley*, and, according to the government, they suddenly found the courthouse doors barred. Cf. *Holland*, 560 U.S. at 649. Not so. These petitioners are entitled to equitable tolling, so these petitions for review are timely.

IV. *Venue*

In the alternative to dismissal as untimely, the government moved to transfer E.E.V.'s petition to the Fifth Circuit because her reinstatement order was issued in Texas. See 28 U.S.C. § 41.[22] Venue is proper in "the court of appeals for the judicial

---

[21] For example, the Supreme Court held in *Pereira v. Sessions*, 585 U.S. 198 (2018), that a notice to appear was required to specify the place, date, and time of a noncitizen's removal hearing. In the face of a flood of requests for dismissals of removal proceedings, we held that a *Pereira* defect did not defeat jurisdiction in removal proceedings in *Ortiz-Santiago v. Barr*, 924 F.3d 956 963–64 (7th Cir. 2019). Our decision in *Ortiz-Santiago* was not the last word. Many noncitizens continued to ask us to revisit that decision. E.g., *Arreola-Ochoa v. Garland*, 34 F.4th 603, 607–08 (7th Cir. 2022) ("Arreola is far from the first person to ask us to revisit this holding.") (collecting cases); *United States v. Calan-Montiel*, 4 F.4th 496, 497 (7th Cir. 2021) (referring to "what seems to be a tsunami of requests to overrule *Ortiz-Santiago*" and concluding: "This subject has been fully worked over in the Seventh Circuit. Unless instructed otherwise by the Supreme Court, we shall continue to treat § 1229a(a)(1) as a claims-processing requirement.").

[22] Notwithstanding its later jurisdictional arguments, in this section of its motion to dismiss, the government wrote: "As *Riley* makes clear, the

circuit in which the immigration judge completed the pro-
ceedings." 8 U.S.C. § 1252(b)(2). Merits briefing will not begin
unless and until E.E.V. is denied withholding-only relief. Her
proceedings began before an immigration judge in Chicago
and are now pending in Indianapolis. If proceedings conclude
there or elsewhere in this circuit, venue is proper here.

Even if venue would also be proper in the Fifth Circuit or
eventually becomes proper elsewhere, we would not transfer
her petition unless doing so would be in the interests of jus-
tice. *Cordova-Soto v. Holder*, 732 F.3d 789, 792 (7th Cir. 2013); 28
U.S.C. § 1631. We see three relevant considerations. First,
E.E.V. acted reasonably by filing in the circuit where her with-
holding-only proceedings began and remained ongoing at the
time of filing. Second, she is represented by pro bono counsel
based in Chicago (and elsewhere outside the Fifth Circuit).
Third, this court has already invested considerable resources
in ruling on the government's motion to dismiss, which has
been fully briefed—with a sur-reply brief from petitioners,
several letters of supplemental authority, and two amicus
briefs—and argued before a three-judge panel, leading to this
opinion. See *Cordova-Soto*, 732 F.3d at 792. Transfer is not war-
ranted.

Accordingly, the government's motions to dismiss or
summarily deny these petitions are DENIED. The govern-
ment's motion to transfer E.E.V.'s petition is DENIED. The
court will hold these petitions for review in abeyance pending
the agency's final decisions in petitioners' withholding-only
proceedings.

---

final administrative removal order in this case is the August 27, 2015, re-
instatement order."

BRENNAN, *Chief Judge*, dissenting. Nearly 20 years ago, E.E.V. was deported under a removal order for being in this country illegally. After she was caught reentering eight years later, the Department of Homeland Security reinstated her removal order, and she entered withholding-only proceedings. She now petitions for review of her reinstatement order. But federal courts have jurisdiction over "final" orders of removal. 8 U.S.C. § 1252(b)(1). A reinstatement order is not a "final" order of removal. So, we lack jurisdiction to review her petition and any post-reinstatement decisions in her withholding-only proceedings.

Section 1252(b)(1) also requires a petition to be filed not later than 30 days after a final order of removal. M.C.C.-G., a Mexican citizen who entered this country illegally, filed a petition after the 30-day deadline. Although the deadline is not jurisdictional, the Supreme Court recently indicated in *Riley v. Bondi*, 606 U.S. 259 (2025), that it is a mandatory claims-processing rule, precluding equitable tolling. Her petition therefore should be denied.

On both questions, the majority opinion holds to the contrary. Because I believe that conflicts with *Riley* and the statutory text, I respectfully dissent.

## I

E.E.V. is a citizen of El Salvador. Around March 2007, she illegally entered this country. DHS detained her and issued a removal order under 8 U.S.C. § 1225(b)(1). She was physically removed to El Salvador. In 2015 she reentered the country and was apprehended once again.

"Congress has created an expedited process for aliens who reenter the United States without authorization after having

already been removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). When "an alien has reentered the United States illegally after having been removed … under an order of removal, the prior order of removal is reinstated from its original date." 8 U.S.C. § 1231(a)(5). The alien cannot appeal within the agency, and the decision to reinstate should not be "reopened" or "reviewed." *Id.*; *see also F.J.A.P. v. Garland*, 94 F.4th 620, 627–28 (7th Cir. 2024), *abrogated by Riley*, 606 U.S. at 259.

Following this streamlined process, DHS reinstated E.E.V.'s order of removal in August 2015. Sometime later, she expressed a fear of returning to El Salvador. *See* 8 C.F.R. § 1208.31. An asylum officer interviewed her in February 2017 and agreed that she had a reasonable fear of persecution or torture in El Salvador. So, the officer referred E.E.V. for withholding-only proceedings—review of her case by an Immigration Judge. *Id.* § 1208.31(e). The proceedings remain pending nearly a decade later.

After the Court decided *Riley*, E.E.V. petitioned for review of the reinstatement order.

## A

Federal courts must always evaluate their jurisdiction before the case's merits. *Chi. Tchrs. Union, Loc. 1 v. Educators for Excellence, Inc.*, 159 F.4th 524, 528 (7th Cir. 2025). This court's jurisdiction is based on 8 U.S.C. § 1252(b)(1). Our review is limited to petitions of a "final order of removal." *Id.* The question is whether E.E.V.'s reinstatement decision is a "final" order of removal. I conclude that it is not.

The Immigration and Nationality Act does not define "order of removal." But *Riley* did. A "final order of removal" is

an order "concluding that the alien is deportable or ordering deportation." *Riley*, 606 U.S. at 267 (quoting 8 U.S.C. § 1101(a)(47)(A)). A final order of removal must "affect the validity" of a previously issued removal order or "render that order non-final." *Id.* at 269. So, for example, a Board of Immigration Appeals order in a withholding-only proceeding is not a "final order of removal." *Id.* at 263. That is because a grant of withholding-only relief does not prevent DHS from removing an alien to a different country other than the one to which removal has been withheld. *Id.* at 269; *see also Guzman Chavez*, 594 U.S. at 537. As another example, an email from a DHS field office declining to reopen a prior removal order is not a "final order of removal." *Velazquez-Olais v. Blanche*, 172 F.4th 536, 538 (7th Cir. 2026). By contrast, a final administrative removal order (FARO)—an order removing an alien because he committed an aggravated felony—is a "final order of removal" because that "order held that Riley was deportable and directed that he be removed from the United States." *Riley*, 606 U.S. at 267.

E.E.V.'s reinstatement order does not "affect the validity" of her original deportation order. The reinstatement decision does what it says: it reinstates a "prior order of removal." § 1231(a)(5); *see also F.J.A.P.*, 94 F.4th at 644 (Brennan, J., concurring in part and dissenting in part). In other words, a reinstatement order "merely effectuates the original removal order." *Laureano v. Att'y Gen. United States of Am.*, 177 F.4th 453, 472 (3d Cir. 2026) (Matey, J., dissenting); *see also Ruiz-Perez v. Garland*, 49 F.4th 972, 982 (5th Cir. 2022) (Oldham, J., dissenting); *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 195 (2d Cir. 2022), *abrogated by Riley*, 606 U.S. at 259. There is no new rationale for removing the alien, who was removable then and is removable now. "The order of removal is the initial order

when the alien first illegally entered the country and was removed, not the later decision to reinstate the prior order of removal." *F.J.A.P.*, 94 F.4th at 644 (Brennan, J., concurring in part and dissenting in part).

Consider, too, that an "alien subject to a reinstated order of removal will not have any removal proceedings." *Guzman-Chavez*, 594 U.S. at 531. How, then, can a reinstatement decision from a *non-removal* proceeding be a reviewable "final order of *removal*?" Put another way, "as a matter of ordinary meaning, it would be odd for a reviewable removal order to come from a non-removal proceeding." *Ruiz-Perez*, 49 F.4th at 982 (Oldham, J., dissenting); *see also Laureano*, 177 F.4th at 473 (Matey, J., dissenting).

Because an alien's original removal order is a "final order of removal," some have argued that a reinstatement order is as well, because they are functionally the same. *See Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003). But applicable statutes expressly distinguish between original orders of removal and reinstatement orders. As the Ninth Circuit recognized, "that Congress placed reinstatement in a separate section from removal suggests that reinstatement is a separate procedure, not a species of removal." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 490 (9th Cir. 2007) (en banc). Reinstatement is a "far more summary procedure than removal," and is akin to a "ministerial" act. *Id.* at 491. Such an order carries no "independent validity." *United States v. Rodriguez*, 162 F.4th 288, 294 (2d Cir. 2025). And regulations implementing the INA "repeat this distinction." *F.J.A.P.*, 94 F.4th at 644 (Brennan, J., concurring in part and dissenting in part) (citing 8 C.F.R. § 208.31(a) (distinguishing between an alien who is "ordered removed" and an alien whose "removal order is reinstated").

I previously observed that this court's precedent has "presume[d]" that a reinstatement decision is a "final order of removal." *F.J.A.P.*, 94 F.4th at 644 (Brennan, J., concurring in part and dissenting in part). In *Riley*, the Court abrogated the analysis and conclusion to the contrary of the majority opinion in *F.J.A.P.* Nonetheless, my colleagues here state that our court has "consistently concluded" that reinstatement orders fall under § 1252.

I read our caselaw differently. *Torres-Tristan v. Holder*, 656 F.3d 653, 656 (7th Cir. 2011), and *Villa v. Barr*, 924 F.3d 370, 373 (7th Cir. 2019), suggest there is jurisdiction, yet do not analyze it. Dictum in *Velazquez-Olais*, 172 F.4th at 538, could be read to support the majority. *Id.* (noting "the act of reinstatement is reviewable under some circumstances"). The closest to a holding this court has reached is one sentence in *Lemos v. Holder*, 636 F.3d 365, 366 (7th Cir. 2011) ("Reinstatement of an old removal order is reviewable in a court of appeals under 8 U.S.C. § 1252.").

These "drive-by" jurisdictional statements carry little weight, like in *Riley*, in which the Court disregarded such previous "loose" proclamations of jurisdiction. 606 U.S. at 275. Our court has yet to independently examine this question, and notably, the cases the majority opinion cites largely predate *Riley*. To the extent this court has concluded that jurisdiction exists over final orders of removal, in light of *Riley* I would overrule that conclusion.

This issue is far from settled. Until *Riley*, courts—including ours—debated and questioned their own precedent. *See, e.g.*, *F.J.A.P.*, 94 F.4th at 643–44 (Brennan, J, concurring in part and dissenting in part.); *Ruiz-Perez*, 49 F.4th at 982–83 (Oldham, J., dissenting); *Bhaktibhai-Patel*, 32 F.4th at 195 (prior

precedent holding "that a reinstatement decision itself quali-
fies as a final order of removal under § 1252" is "questionable"
and "unstable"); *Martinez v. Garland*, 86 F.4th 561, 568 n.4 (4th
Cir. 2023) ("The imperfect fit between this definition of final-
ity and a reinstatement decision … might suggest that a rein-
statement decision is not a final order of removal."); *Arostegui-
Maldonado v. Garland*, 75 F.4th 1132, 1149 n.2 (10th Cir. 2023)
(Tymkovich, J., concurring) ("dubious" whether a reinstate-
ment order is a final order of removal"); *Vega-Anguiano v. Barr*,
982 F.3d 542, 557 (9th Cir. 2019) (Bennett, J., dissenting from
denial of rehearing en banc) ("The majority, apparently un-
happy with the statute Congress wrote, rewrites 'order of re-
moval' as 'reinstatement order.'"). Since *Riley*, at least one
judge has recognized the importance of that Supreme Court
decision on this question. *See Laureano*, 177 F.4th at 472–73
(Matey, J., dissenting). This court should follow suit.

**B**

As I understand my colleagues' reading of *Riley*, they be-
lieve it used "final order of removal" and "an order of depor-
tation" interchangeably, so the terms are synonymous. Be-
cause E.E.V.'s reinstatement order states she is "removable,"
she is therefore subject to an "order of deportation." I read
*Riley* differently. That case explained that "final orders of re-
moval" are those orders that "affect the validity of a previ-
ously issued order of removal or render that order non-final."
*Riley*, 606 U.S. at 269. A reinstatement decision does not inval-
idate her removal order; it gives effect to that order. Left un-
explained in the majority opinion is why E.E.V.'s reinstate-
ment order affects the validity of her 2007 order.

Nor does the majority opinion engage with the final part
of E.E.V.'s reinstatement order "that the above-named alien is

subject to removal through reinstatement of the prior order." Per this statement, E.E.V. is being deported because of her original 2007 order of removal. So E.E.V.'s reinstatement order supports a reading of § 1252(b)(1) that the "final order of removal"—the order that concludes she is "deportable"—is her original order.

E.E.V. makes a slightly different argument, apparently accepted in the majority opinion. Once the alien is physically deported, her original removal order is "defunct," and by issuing the reinstatement order, the latter "revive[s]" the former. Thus, a reinstatement decision "affect[s] the validity of a previously issued order of removal." *Riley*, 606 U.S. at 269.

Reinstatement orders are not defibrillators. I am aware of no statute or case stating that original removal orders are defunct until given life by reinstatement orders. Nor does E.E.V. cite any. Instead, her original removal order remains valid; a reinstatement order restores that removal order. *F.J.A.P.*, 94 F.4th at 641, 644 (Brennan, J., concurring in part) (citing §§ 1101(a)(47)(A), 1231(a)(5)). Indeed, it seems that under my colleagues' reasoning, illegal reentry would not exist because when E.E.V. reentered the country, her removal order was "defunct."[1]

To be sure, as E.E.V. points out, the alien cannot "travel back in time and challenge the prior removal order" to contest his current withholding-only proceedings. Yet a reinstate-

---

[1] For example, the majority opinion cites statutes concerning the Attorney General's consent for readmission. But both 8 U.S.C. §§ 1182(a)(9)(A)(iii) and 1326(a)(2) provide that the Attorney General may consent to an alien who has illegally reentered "reapplying for admission." That presumes the alien's removal order is valid, as there would be no reason for the alien to reapply for admission.

ment proceeding does not allow for judicial review of a pre-
vious order to remove an alien. That is a feature, not a bug.
Congress may choose "to give fewer legal rights to aliens re-
moved previously than to those who face removal for the first
time." *Martinez v. Larose*, 980 F.3d 551, 554–55 (6th Cir. 2020)
(Thapar, J., concurring in the denial of rehearing en banc).

The majority opinion includes a cautionary hypothetical
for why judicial review is appropriate. The opinion imagines
a U.S. citizen who was deemed illegal, deported, and then
reenters the country. After DHS again apprehends the citizen
and finds that he has already been deported, the agency rein-
states the citizen's prior order of removal. No judicial review
of that last determination will again result in removal. An Ar-
ticle III federal court therefore must have jurisdiction to pre-
vent such a wrong.

The probability of this hypothetical occurring is vanish-
ingly small. A citizen who was wrongly ordered removed
under a FARO would have a chance to assert citizenship de-
fensively, and if denied, seek review in a court of appeals by
petitioning for review under § 1252(b). *See Garza-Flores v.
Mayorkas*, 38 F.4th 440, 443 (5th Cir. 2022). Then, "[i]f the peti-
tioner claims to be a national of the United States and the
court of appeals finds from the pleadings and affidavits that
no genuine issue of material fact about the petitioner's nation-
ality is presented, the court shall decide the nationality
claim." 8 U.S.C. § 1252(b)(5)(A). But if the appeals court be-
lieves there is a genuine dispute about his nationality, it can
transfer proceedings to a district court. *Id.* § 1252(b)(5)(B). If
those safeguards fail, and the citizen is wrongfully removed
and reenters, the asylum officer would again have to incor-
rectly deem him an alien. But the statute requires reinstate-

ment only when "the Attorney General finds that an alien has reentered the United States illegally." *Id.* § 1231(a)(5). The odds of all these failures occurring are near zero.

The hypothetical also stresses a need for federal court review when an alien reenters the country and the removal order is reinstated. But the events here show that an alien's rights are protected at that juncture. Without this court's review, an asylum officer still found that E.E.V. had credible concerns about returning to El Salvador. And for approximately the last eight years, she has been in withholding-only proceedings.

In any event, we must follow *Riley*'s instructions. In the face of "legitimate practical concerns," our court "must nevertheless follow the statutory text and our prior precedents." *Riley*, 606 U.S. at 272. At any time, Congress can revise the text of § 1252(b)(1) to provide for more judicial review. Until then, courts should apply the statute as written: E.E.V.'s "final order of removal" is her 2007 order, not the order reinstating that decision. E.E.V. does not challenge that 2007 order, so we have no jurisdiction. Consequently, we cannot review decisions made after the reinstatement order, like those in reasonable fear or withholding-only proceedings, because they do not relate to "judicial review of a final order." 8 U.S.C. § 1252(b)(9).

## II

The majority opinion holds next that equitable tolling is available for these untimely petitions. I respectfully disagree.

**A**

M.C.C.-G. is a citizen of Mexico who entered the country illegally at some unknown date.[2] In November 2018, she was convicted of theft in Indiana and given a suspended sentence of one year. In May 2025, DHS issued a FARO and ordered her removed to Mexico. She expressed fear of persecution and torture if she returned, but an asylum officer found her fears not reasonable. An Immigration Judge reviewed her case and agreed with her, overruling the asylum officer, and placed her in withholding-only proceedings. In December 2025, she was denied relief and she appealed to the Board of Immigration Appeals. Her case remains pending.

Her FARO is a "final order of removal." *Riley*, 606 U.S. at 267. So, under § 1252(b)(1), M.C.C.-G.'s petition for review of that FARO must have been filed "not later than 30 days" after it was issued. M.C.C.-G. filed her petition outside this 30-day deadline.[3] The question is whether this 30-day deadline allows for equitable tolling.

Statutory filing deadlines fall into different categories. Some are "jurisdictional," meaning if the filer misses the deadline, the court lacks the power to hear the case. *Harrow v. Dept. of Def.*, 601 U.S. 480, 484 (2024). But by and large, filing deadlines are "claims-processing rules." *United States v. John-*

---

[2] I agree with the majority that we have jurisdiction over M.C.C.-G.'s petition. The Government's argument, as I see it, runs counter to the pathway that *Riley* established. To the extent my colleagues go beyond that reasoning, I express no opinion.

[3] If this court has jurisdiction over E.E.V.'s petition from her reinstatement order, the equitable tolling analysis would apply to her petition just the same as it does for M.C.C.-G.'s petition because her petition was also filed outside the 30-day deadline.

*ston*, 158 F.4th 870, 875 (7th Cir. 2025). These requirements "seek to promote the orderly progress of litigation by requiring that parties take certain procedural steps at certain specified times." *Id.* (citation modified). For a claims-processing rule, equitable tolling is presumptively available, but the presumption can be rebutted. *Holland v. Florida*, 560 U.S. 631, 645–46 (2010).

Some claims-processing rules are "mandatory." Such deadlines are "unalterable" and must be followed if a party raises them as a defense. *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019). Accordingly, equitable tolling of mandatory claims-processing rules is almost always unavailable. *See Enbridge Energy, LP v. Nessel*, 146 S. Ct. 1074, 1081–82 (2026) ("Enbridge argues that it is presumptively subject to equitable tolling. … Some nonjurisdictional rules remain 'mandatory' and 'are not susceptible of the equitable approach' that Enbridge urges."). To be sure, the Court has "reserved whether mandatory claim-processing rules may [ever] be subject to equitable exceptions." *Fort Bend County v. Davis*, 587 U.S. 541, 549 n.5 (2019). But "the Court's recent decisions in this area have consistently compelled enforcement of mandatory claim-processing rules." *In re Wade*, 926 F.3d 447, 450 (7th Cir. 2019).

Section 1252(b)(1)'s 30-day deadline is a mandatory claims-processing rule. *Riley* confirmed this. There, the Court characterized the issue on appeal as "whether the 30-day filing deadline … is a jurisdictional requirement or simply a *mandatory* claim-processing rule." 606 U.S. at 263 (emphasis added). The Court chose the latter. *Id.* Further, the majority opinion in *Riley* analogized to a case involving a "mandatory time bar." *Id.* at 277 (citing *Wilkins v. United States*, 598 U.S.

152, 159 (2023)). From these points, we can conclude the Court took equitable tolling off the table.[4]

After *Riley*, another court has concluded that 8 U.S.C. § 1252(b)(1) is mandatory. As *Liao v. Bondi*, 162 F.4th 519 (5th Cir. 2025) explains, *Riley* "did not *expressly* conclude that this rule was, in fact, mandatory. Nevertheless, its exposition of the surrounding precedent strongly points us in that direction." *Id.* at 524. Like the Fifth Circuit, I would hold what the Court in *Riley* acknowledged—the 30-day deadline is mandatory and not subject to equitable tolling. *Id.*

There are more reasons to believe that the 30-day deadline cannot be equitably tolled. The presumption in favor of equitable tolling is rebutted if "there is good reason to believe that Congress did not want the equitable tolling doctrine to apply." *Enbridge*, 146 S. Ct. at 1082 (citation modified). Congress in § 1252(b)(1) used unequivocal language: "The petition for review *must be filed not later* than 30 days after the date of the final order of removal." § 1252(b)(1) (emphasis added). The Court has instructed that "strict phrasing" in a deadline "is at least consistent with treating its deadline as mandatory and not subject to equitable tolling." *Enbridge*, 146 S. Ct. at 1082. True, the Court also cautioned that mandatory language alone does not rebut the presumption of equitable tolling. *Id.* But this factor strongly indicates that Congress intended to foreclose tolling. Because § 1252(b)(1) speaks in unqualified terms, and *Riley* describes that deadline as "mandatory," I

---

[4] This argument was before the Court in *Riley*. The United States included it in its reply brief. *See* Reply Brief for Respondent Supporting Petitioner at 7–8, *Riley v. Bondi*, 606 U.S. 259 (2025) (No. 23-1270).

would hold that equitable tolling is unavailable. M.C.C.-G. filed her petition after the 30-day deadline, so it is untimely.

**B**

My colleagues interpret § 1252(b)(1) differently. They observe that the dissent in *Riley* noted that equitable tolling would be available, *see* 606 U.S. at 302–03 (Sotomayor, J., dissenting), and the majority opinion in *Riley* did not mention equitable tolling. This, according to my colleagues, means the majority in *Riley* did not decide the question.

But *Riley* stated the 30-day deadline is a "mandatory claims-processing rule." *Id.* at 263. If not dispositive, it follows from that statement that equitable tolling should not be permitted, as the rule is "unalterable" and equitable tolling in that circumstance is almost always unavailable. *Nutraceutical*, 586 U.S. at 192; *see also Enbridge*, 146 S. Ct. at 1081–82. And the fact that the majority opinion relies on a Supreme Court dissent should suggest its position is unlikely to prevail. *Cf. DHS v. D.V.D.*, 145 S. Ct. 2627, 2629–30 (2025) (district court wrongly ordered compliance with a stayed order because the "only authority it cited was the dissent from the [Court's] stay order.").

Granted, after *Riley*, circuits have disagreed on whether § 1252(b)(1) allows for equitable tolling. The majority opinion agrees with *Oxlaj-Perez v. Blanche*, 174 F.4th 516, 520 (6th Cir. 2026), which held that § 1252(b)(1) is subject to equitable tolling. But for several reasons *Oxlaj-Perez* is unpersuasive on this question.

The first problem with *Oxlaj-Perez* and the majority opinion here concerns statutory exceptions. The Supreme Court recently explained that "'an explicit listing of exceptions,' set

forth in a detailed manner, strongly indicates that Congress did not intend courts to read other unmentioned, open-ended 'equitable' exceptions into the statute that it wrote." *Enbridge*, 146 S. Ct. at 1082–83 (quoting *United States v. Brockamp*, 519 U.S. 347, 352 (1997)). So the lack of exceptions in § 1252(b)(1), my colleagues reason, shows that Congress intended for equitable tolling to be available. *See also Oxlaj-Perez*, 174 F.4th at 524. But that does not follow. That the presence of exceptions forecloses tolling does not mean the absence of exceptions permits tolling. Said another way, the lack of exceptions is not dispositive.

Second, the majority opinion and *Oxlaj-Perez* give the text of § 1252(b)(1) short shrift. My colleagues concede this statute has mandatory language but then quickly observe that compulsory language is not dispositive. But mandatory statutory language still has great force. That is the rule of *Enbridge*, 146 S. Ct. at 1082, and *Boechler v. Commissioner of Internal Revenue*, 596 U.S. 199 (2022). In the latter case, the statutory provision for the deadline at issue had non-mandatory language: "The person may, within 30 days … ." *Id.* at 204 (quoting 26 U.S.C. § 6330). The Court's analysis focused on how the text was written in the statute. *Id.* at 210 ("This deadline is not written in 'emphatic form' or with 'detailed' and 'technical' language, nor is it reiterated multiple times."). Unlike the compulsory statutory language in *Enbridge*, the statute in *Boechler* used the permissive "may," so equitable tolling could be available. *Enbridge*, 146 S. Ct. at 1082.

Third, another factor when evaluating if equitable tolling applies is whether "the nature of the [statute's] subject matter" is consistent with tolling. *Id.* at 1084. The Court termed this a "garnish" in the overall analysis. *Id.* (quoting *Arellano v.*

*McDonough*, 598 U.S. 1, 14 (2023)). Yet, the majority opinion submits that the "expansive and grave" subject matter of immigration means that Congress did not intend to foreclose equitable tolling. *See also Oxlaj-Perez*, 174 F.4th at 528 ("[T]he humanitarian nature of petitions for review instead militates in favor of tolling."). The majority opinion then lists several recent immigration incidents, that "cannot be attributed" to mistakes, as "examples of potential grounds for equitable tolling and to illustrate the stakes if judicial review were cut off."

This flips the test around. The question is whether Congress wanted equitable tolling, not whether equitable tolling vindicates the rights of alien petitioners. And from Congress's viewpoint, "the nature of the subject matter" cuts against equitable tolling. The Act, including § 1252(b)(1), exists to "expedite[] judicial review of final orders of removal." *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). And the plain text of the statute shows that Congress likely envisioned strict adherence to the 30-day deadline. That would prevent the precise problem here: aliens on a "supposedly streamlined" removal track with claims that take nearly a decade to resolve. *Riley*, 606 U.S. at 264. After all, Congress sought to "effect the quick removal of dangerous aliens." *Id.* at 272. Permitting equitable tolling, then, undermines the statute.

The majority opinion looks for support in *Holland*, 560 U.S. at 646. There, the Court reasoned that habeas corpus has "traditionally" been governed by equitable principles, so 28 U.S.C. § 2244(d) is subject to equitable tolling. *Id.* 645–46. The majority opinion reasons that § 1252 "implicates habeas corpus" because it channels judicial review of certain claims away from habeas relief. But if anything, § 1252 is not related because that statute expressly exempts claims from habeas re-

lief. § 1252(a)(4)–(5), (b)(5), (b)(9), (e)(2), (g). So *Holland*'s reasoning—which justified tolling based on the equitable principles of habeas—should have no bearing on a judicial review statute that exempts claims from habeas.

My colleagues note that a petition for review may be the only mechanism Congress has provided to argue before an Article III court. But most appellate deadlines limit federal court review. Take two examples. We have upheld filing deadlines in the habeas context, depriving state prisoners of review by a federal court. *Taylor v. Michael*, 724 F.3d 806, 810 (7th Cir. 2013) (Despite alleging a constitutional violation, "we dismiss this case for the simple reason that Taylor did not file his petition within the statutorily prescribed time limit."). And in *Enbridge*, the Court held that 28 U.S.C. § 1446(b)(1) did not permit equitable tolling. 146 S. Ct. at 1079. The resulting effect deprives untimely state-court parties of their ability to remove their case to federal court, precluding review by an Article III judge.

Some aliens may raise constitutional claims, my colleagues warn, and the "importance of such claims" cuts in favor of interpreting the 30-day deadline to permit equitable tolling. But that a claim is constitutional does not mean a federal court must hear it. "The Constitution does not require that courts hear all constitutional claims." *Mullin v. Doe*, Nos. 25–1083 and 25–1084, 2026 WL 1825840, at *14 (2026) (Thomas, J., concurring) (citation modified). Indeed, "the very text of the Constitution refutes the principle that *all* constitutional violations must be remediable in the courts." *Id.* (quoting *Webster v. Doe*, 486 U.S. 592, 613 (1988) (Scalia, J., dissenting) (citation modified)). For example, under the political-question doctrine, federal courts cannot entertain those

constitutional claims committed solely to another branch. *Shiba v. Mullin*, 173 F.4th 895, 901–02 (7th Cir. 2026). Nor can courts resolve certain suits against federal officers, even if they allege violation of constitutional rights. *Egbert v. Boule*, 596 U.S. 482, 493–94 (2022) (alleging excessive force, retaliation, and infringement of rights); *see also Nielsen v. Watanabe*, No. 25-417, 2026 WL 1780123, at *1 (2026) (cert. granted) (whether *Bivens* action is available against prison official who failed to treat prisoner's chronic pain). In short, that some constitutional claims may go unadjudicated is no reason to deviate from the statute's text in order to permit equitable tolling.

### III

This case should be decided under *Riley*, the text of § 1252(b)(1), and that statute's context. The majority opinion marginalizes those considerations. The result is contrary to Congress's statutory arrangement of effectuating timely deportations.[5]

E.E.V. repeatedly violated our country's immigration laws, yet she has remained in this country for nearly a decade after DHS placed her in "expedited" removal proceedings. M.C.C.-G. was convicted of an aggravated felony, placing her among the "dangerous aliens" Congress sought to "expeditiously" remove. *Riley*, 606 U.S. at 272. The majority opinion finds jurisdiction where there is none. The result is even more delay for E.E.V., M.C.C.-G., and future petitioners. Because those holdings are contrary to the statutes and fail to adhere to the Supreme Court's decision in *Riley*, I respectfully dissent.

---

[5] For this reason, I would not reach whether M.C.C.-G. is entitled to equitable tolling.